UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| Harvey Goldman & Company, a/k/a Worldwide Equipment Company, | Case No. 10-62501 |
| | Hon. Phillip J. Shefferly |
| Debtor. / | |
| Stuart A. Gold, Trustee of the Chapter 7 Bankruptcy Estate of Harvey Goldman & Company, | Adversary Proceeding No. 11-06300-PJS |
| Plaintiff, | |
| v. | |
| Nova World International, LLC, d/b/a Nova Shipping, | |
| Defendant. / | |

**OPINION GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Introduction**

The Chapter 7 trustee filed this adversary proceeding under § 549 of the Bankruptcy Code to recover $43,700.00 of post-petition payments made by the debtor to the defendant. The trustee and the defendant filed cross motions for summary judgment. For the reasons set forth in this opinion, the Court finds that the trustee may avoid the payments made by the debtor to the defendant under § 549. As a result, the Court will grant the trustee's motion for summary judgment and deny the defendant's motion for summary judgment.

## Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

## Facts

The following facts are not in dispute.[1]

On July 14, 2010, an involuntary Chapter 7 petition was filed against Harvey Goldman & Company ("Debtor"). When the involuntary petition was filed, the Debtor was in the business of buying and selling used industrial machinery and equipment, some of which the Debtor sold to purchasers overseas. The Debtor contested the involuntary petition and continued its business during the gap period, i.e. between the filing of the involuntary petition and the entry of the order for relief. After a trial on the involuntary petition, the Court granted the petition and entered an order for relief on November 16, 2010.

Nova World International, LLC ("Nova") is a Michigan limited liability company owned by Yevgeniy Epshteyn and engaged in the business of arranging shipments of cargo to various places around the world. Nova is a non-vessel operating common carrier that provides "delivery of cargo from point A to point B" (ECF. No. 43, Ex. A, Epshteyn dep. at 7). Nova does not own or operate any vessels, but instead has "service contracts with several steamship lines" (id.) and has relationships with trucking companies and rigging companies. Nova does not physically put cargo into containers for shipping, but instead works over the telephone and computer to coordinate with

---

[1] On January 7, 2013, the Court entered a Joint Final Pretrial Order (ECF No. 40) that contains a stipulation of facts. The facts set forth in this section of the opinion are taken in part from the stipulation and in part from the affidavits, deposition testimony and papers filed by the parties.

different companies to put cargo into containers, have them picked up, and then shipped (id. at 9, 18). Nova operates out of an office in West Bloomfield, Michigan, with five employees, two of whom are project managers that provide the coordinating services, and two of whom are in charge of preparing the documentation for each project (id. at 8-9).

The Debtor was one of Nova's first customers (id. at 13). The Debtor and Nova started doing business together in 2007 or 2008. Since then, Nova handled approximately 30 to 40 containers each year for the Debtor (id. at 14). Typically, when the Debtor needed Nova's services, one of the Debtor's employees, either David Simcha or Simon Levin, would contact Nova by telephone or Epshteyn would stop by the Debtor's warehouse. According to Epshteyn, the "[m]ost likely [ ] way it would happen is I could stop by Worldwide and ask them . . . what the plan is for the next month . . . ." (Id. at 15.) Simcha or Levin would estimate the number of containers the Debtor would need, as it generally took some time for the Debtor to negotiate a sale. Later, Simcha or Levin would describe the machine that the Debtor needed to have shipped, and inform Epshteyn of the intended destination. (Id. at 15-16.) Nova would then provide "booking numbers" to a trucking company, and either a trucking company or someone from a steamship line would then take an appropriately sized container to the Debtor's location to be used for shipping the Debtor's machine (id. at 17-18).

Once the container was at the Debtor's location, the Debtor's employees loaded the machine into the container (id. at 18). Nova would arrange to have either a trucking company or a steamship line pick up the container from the Debtor and take it to a railhead in Detroit (id. at 18-19). Epshteyn estimated that about half the time, Nova arranged for delivering the container to the Debtor's location and then shipping the container via truck and steamship to the Debtor's requested

-3-

destination. The other half of the time, the steamship line was "hundred percent" responsible (id. at 19).

In this adversary proceeding, the trustee seeks to recover payments for six overseas shipments. For all six of these shipments, the Debtor hired Nova prior to the involuntary bankruptcy petition to make arrangements for the transport of specific machines. Nova performed its services, and the Debtor's machines were placed on vessels that sailed from the United States, prior to the involuntary bankruptcy petition being filed. After the Debtor's machines were placed on vessels leaving the United States, but prior to the involuntary bankruptcy petition, Nova issued an invoice ("Invoices") for each of these shipments. Each of the Invoices contained a description of the cargo, a description of services relating to the cargo, a date of shipment, terms for payment and an invoice amount. Each of the Invoices also contained the statement that it was "Subject to Terms and Conditions listed at: www.nova-shipping.com."

Paragraph 1 of the Terms and Conditions ("Terms and Conditions") on Nova's website states:

> These Terms and Conditions apply to any and all purchasing activities between NOVA WORLD INTERNATIONAL, LLC, a Michigan, USA limited liability company doing business as Nova Shipping and its related companies, agents and/or representatives (collectively, the "Company") and the "Customer" and to any and all services performed and goods sold or provided by the Company to the Customer. Legal relationships between the Company and the Customer are governed exclusively by these Terms and Conditions.

Paragraph 5 of the Terms and Conditions states:

> [N]or does Company assume any responsibility or liability for any acts and/or omissions of such third parties and/or its agents, and the Company shall not be liable for any delay or loss of any kind, which occurs while a shipment is in the custody or control of a third party or the agent of a third party. The Customer agrees to assert and bring any and all claims in connection with the acts or omissions of a third party solely against such third party and/or its agents[.]

Paragraph 11(a) of the Terms and Conditions states:

> The Company issues invoices upon commencement of the services for the Customer or the sale of goods to the Customer. Except where otherwise agreed in writing signed by the Company, the Customer shall pay in full all invoices within ten (10) days from date of invoice.

Other than the Invoices, there are no documents between Nova and the Debtor that refer in any way to the Terms and Conditions, or to any variance in the Terms and Conditions.

The Debtor paid each of the Invoices by check during the gap period. One check was issued for payment of two of the Invoices, and a separate check was issued for each of the other four Invoices. The Debtor issued all of the checks after the date of the involuntary petition, and all of them cleared before the order for relief. The invoice number, the invoice date, the sailing date, the invoice amount and payment terms, as well as the date of issuance, date of clearance and amount of the Debtor's checks paying the Invoices, are as follows:

| Invoice Number | Invoice Date | Sailing Date | Invoice Amount | Invoice Terms | Date of Debtor's Check | Date of Clearance of Debtor's Check | Amount of Debtor's Check |
|---|---|---|---|---|---|---|---|
| 3922 | 6/7/2010 | 6/7/2010 | $20,000.00 | 10 days | 7/22/2010 | 7/27/2010 | $23,350.00 |
| 3940 | 5/24/2010 | 5/24/2010 | $3,350.00 | 20 days | 7/22/2010 | 7/27/2010 | |
| 3967 | 6/18/2010 | 7/3/2010 | $6,300.00 | 10 days | 7/23/2010 | 7/26/2010 | $6,300.00 |
| 3989 | 6/7/2010 | 5/21/2010 | $3,350.00 | 10 days | 8/6/2010 | 8/12/2010 | $3,350.00 |
| 4003 | 6/24/2010 | 6/2/2010 | $7,200.00 | 10 days | 8/2/2010 | 8/6/2010 | $7,200.00 |
| 3952 | 6/18/2010 | 7/2/2010 | $3,500.00 | 10 days | 8/5/2010 | 8/9/2010 | $3,500.00 |

Nova performed all of the services that are described on the Invoices prior to the time that the involuntary bankruptcy petition was filed. Nova does not have any records to show that it performed any services described on the Invoices after the involuntary bankruptcy petition was filed

-5-

(ECF No. 43, Ex. A at 91). Although all of the Invoices predate the filing of the involuntary bankruptcy petition, the Debtor's machines that are referenced in the Invoices did not arrive at their ultimate destinations overseas until after the involuntary bankruptcy petition was filed. The dates of delivery of the machines covered by the Invoices are as follows:

| Invoice Number | Delivery Date |
|---|---|
| 3922 | 8/12/2010 |
| 3940 | 7/17/2010 |
| 3967 | 7/26/2010 |
| 3989 | 7/30/2010 |
| 4003 | 7/30/2010 |
| 3952 | 7/31/2010 |

Stuart Gold ("Trustee") was appointed as the Chapter 7 trustee for the Debtor after the order for relief was entered. On August 17, 2011, the Trustee filed a one count complaint in this adversary proceeding to avoid the five payments ("Transfers") made by the Debtor with respect to the Invoices. After the close of discovery, on December 31, 2012, the Trustee and Nova filed a consent (ECF No. 39) to the entry of a joint final pretrial order. On January 7, 2013, the Court conducted the final pretrial conference, at which the Trustee and Nova requested that the Court postpone the trial and instead extend the deadline for filing dispositive motions so that they each could file a motion for summary judgment. The Court granted their request. On February 7, 2013, the Trustee filed a motion for summary judgment. On the same day, Nova filed a motion for summary judgment. On March 11, 2013, the Court heard arguments on the cross motions for summary

judgment and took them under advisement. The cross motions for summary judgment are now ready for decision.

## Summary Judgment Standard

Fed. R. Civ. P. 56 for summary judgment is incorporated into Fed. R. Bankr. P. 7056. Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48. A "genuine" issue is present "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Berryman v. Rieger, 150 F.3d 561, 566 (6th Cir. 1998) (quoting Anderson, 477 U.S. at 248).

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Kalamazoo River Study Group v. Rockwell International Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." Id. (citing Anderson, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. Berryman v. Rieger, 150 F.3d at 566 (citing Anderson, 447 U.S. at 256).

"Essentially, a motion for summary judgment is a means by which to 'challenge the opposing party to "put up or shut up" on a critical issue.'" Cox v. Kentucky Dept. of Transportation, 53 F.3d 146, 149 (6th Cir. 1995) (quoting Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477

(6th Cir.1989)). "If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion should be granted." Id. at 150 (citing Street, 886 F.2d at 1480).

**Discussion**

Section 549(a) of the Bankruptcy Code governs the avoidance of post-petition transfers of property of a bankruptcy estate. It provides as follows:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
>
> (1) that occurs after the commencement of the case; and
>
> (2) (A) that is authorized only under section 303(f) or 542(c) of this title; or
>
> (B) that is not authorized under this title or by the court.

Nova does not dispute that the Transfers occurred after the commencement of this bankruptcy case. Nova also does not dispute that the Transfers were made from property of the bankruptcy estate. Finally, Nova does not dispute that the Transfers were authorized to be made by the Debtor only under § 303(f)[2] of the Bankruptcy Code, and not by any other provision of the Bankruptcy Code or by the Court.

There is no question that all of the elements of § 549(a) are present. The dispute between Nova and the Trustee turns on whether Nova is entitled to invoke the exception to the avoidance of a post-petition transfer that is set forth as follows in § 549(b):

---

[2] Section 303(f) provides that after an involuntary bankruptcy petition has been filed, "until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced."

-8-

(b) In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

Federal Rule of Bankruptcy Procedure 6001 states that "[a]ny entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof." Therefore, it is Nova's burden to show that the Transfers qualify for the exception of § 549(b).

In its motion for summary judgment, Nova argues that the Transfers qualify for the exception under § 549(b) because Nova gave value to the Debtor after the involuntary bankruptcy petition was filed. According to Nova, even though it was hired by the Debtor prior to the involuntary bankruptcy petition, and performed all of the services to arrange and coordinate the shipments of the Debtor's machines prior to the involuntary bankruptcy petition, the Debtor only realized any value from Nova's services when the Debtor's machines reached their ultimate destinations overseas, which occurred after the involuntary bankruptcy petition was filed. Further, Nova contends that the Debtor only became obligated to pay the Invoices when the Debtor's machines reached their final overseas destinations. To the extent that its Invoices and Terms and Conditions state otherwise, Nova argues that the Debtor did not sign the Invoices, the Debtor did not read the Terms and Conditions, and the Invoices and Terms and Conditions are not applicable to the Debtor because both Nova and the Debtor "understood" that the Debtor would only pay Nova once the Debtor's machines reached their overseas destination.

In support of its motion, Nova relies upon affidavits signed by Simcha and Levin, plus the deposition testimony of Epshteyn. Simcha, the former president of the Debtor, states in paragraph 3 of his affidavit (ECF No. 44-7) that notwithstanding the terms of the Invoices, "the invoiced amount

-9-

would not be due and payable until the goods were actually delivered to the intended party." In paragraph 4 of his affidavit, Simcha states that the Debtor received "absolutely no benefit from the services of Nova Shipping until delivery was made to the intended party[.]" In paragraph 5 of his affidavit, Simcha says that he "never signed and never intended to be bound by" the Terms and Conditions, because they "did not constitute the actual agreement of the parties." Finally, in paragraph 6 of his affidavit, Simcha states that Nova "was wholly responsible" to the Debtor until delivery of the Debtor's cargo was made to its final destination.

Levin's affidavit (ECF No. 44-6) is similar to Simcha's. Levin states in paragraph 3 of his affidavit that the Debtor and Nova "understood and agreed that the invoiced price for shipment would not be due and payable" until the Debtor's machines were delivered to their intended recipient overseas. In paragraph 5 of his affidavit, Levin says that "both parties ignored any language on Nova Shipping's website concerning payment to be made within 10 or even 20 days from the invoice date."

Epshteyn's testimony was similar. Epshteyn did not dispute that the Invoices require payment of the invoiced amount within a specified number of days, and he did not dispute that the Terms and Conditions likewise require payment of the invoiced amount within the terms set forth in the Invoices. However, Epshteyn explained that the Invoices are not really demands for payment, but instead are only intended to be "informational" (ECF No. 43, Ex. A at 22-23), designed to "advise" Nova's customers what a transaction may cost the customer (id. at 85). As for the Terms and Conditions, Epshteyn explained that they "are general and they are created to protect Nova" (id. at 53), although he acknowledged that there was nothing in writing between Nova and the Debtor that varied in any way either the Invoices or the Terms and Conditions (id.).

-10-

The Trustee argues that Nova has not come forward with any specific facts, supported by evidence in the record, to show that it gave anything of value to the Debtor after the commencement of the bankruptcy case. Epshteyn's deposition, Simcha's affidavit and Levin affidavit do not identify a single act or service performed by Nova for the Debtor post-petition. Instead, they demonstrate that all of Nova's services in arranging the six shipments of the Debtor's machines, were performed before the bankruptcy case was filed. Therefore, the Transfers were made to pay pre-petition debts and not for any value given to the Debtor post-petition.

The starting point to determine whether Nova has met its burden of proof is the statute itself. Section 549(b) provides an exception to the avoidance of a post-petition transfer under § 549(a) only "to the extent any value . . . is given after the commencement of the case in exchange for such transfer." Nova's arguments are misplaced in that they focus on the value that Nova believes the Debtor received after the commencement of the bankruptcy case. Section 549(b) requires the Court to consider what was *given* by the transferee post-petition, not what was *received* by the debtor post-petition. See Guinn v. Oakwood Properties, Inc. (In re Oakwood Markets, Inc.), 203 F.3d 406, 410 (6th Cir. 2000) ("[T]he extent of value given must be determined from the 'giver's' perspective[.]").

Neither Simcha's affidavit nor Levin's affidavit describe anything that was given by Nova to the Debtor after the commencement of the case. Neither describes even a single service or act performed by Nova after the involuntary bankruptcy petition was filed. Similarly, when asked in his deposition to identify any services that Nova performed for the Debtor after the filing of the involuntary bankruptcy petition, Epshteyn could not do so. In his deposition, Epshteyn was asked a series of questions about each of the shipments covered by the Invoices. In particular, Epshteyn was asked whether the services performed by Nova for the Debtor were performed prior to the

involuntary bankruptcy petition or after it. His answers were remarkably similar for each of the Invoices. Epshteyn could not identify any services that Nova performed after the involuntary bankruptcy petition was filed for any of the shipments covered by the Invoices. Further, when asked whether Nova had any records that might reflect any services performed by Nova for the Debtor after the involuntary bankruptcy petition was filed, Epshteyn answered "no" and concluded that "[i]t is "impossible to determine whether Nova did anything after the petition date (ECF No. 43, Ex. A at 91).

In sum, Epshteyn's deposition testimony and the affidavits of Simcha and Levin do not contain any probative evidence that Nova performed any services for the Debtor, or otherwise *gave* anything of value to the Debtor after the involuntary bankruptcy petition was filed.

Although conceding that it has no records nor any other evidence of any services that it performed for the Debtor after the involuntary bankruptcy petition was filed, Nova nonetheless asserts that it is still entitled to invoke the exception of § 549(b) because the Debtor only received a benefit from Nova's pre-petition services once the Debtor's machines arrived at their intended overseas destinations, which occurred post-petition. Stated another way, Nova contends that even if all of its services in arranging and coordinating the shipments of the Debtor's machines took place prior to the involuntary bankruptcy petition being filed, the Debtor received no benefit from those pre-petition services until the machines were delivered post-petition. Therefore, the Debtor had no obligation to pay for those services until the machines arrived at their intended destinations overseas. According to Nova, this makes the Debtor's obligations to Nova post-petition debts.

Nova's own documents belie its argument. Each of the Invoices describes services that Nova performed pre-petition. Each of the Invoices requires payment of a sum certain. Each of the

Invoices sets forth the due date for such payment. Five of the Invoices require payment in ten days and the other Invoice requires payment in 20 days. None of the Invoices say or imply in any way that payment is only required when the Debtor's machine reaches its final destination. Further, each of the Invoices states that it is subject to the Terms and Conditions. Section 11(a) of the Terms and Conditions confirms that "the Customer shall pay in full all invoices within ten (10) days from the date of invoice." The Invoices and the Terms and Conditions unequivocally require the Debtor to pay Nova the amounts set forth in the Invoices by a date certain, without regard to whether the machines ultimately reach their intended final destination. The balance of the Terms and Conditions are also contrary to Nova's argument. Once Nova performed its services in coordinating and arranging for the shipments, and then rendered the Invoices upon the cargo sailing from the United States, Nova had done all that it was required to do in order to be paid for its services. Most importantly, any risk of loss that occurred after that date was contractually borne by the Debtor and not by Nova.[3]

The documentary evidence of the relationship between Nova and the Debtor is clear and consistent. However, Nova urges the Court to disregard its Invoices and Terms and Conditions because there was an "understanding" between Nova and the Debtor that the Debtor did not have

---

[3] Nova attached to its motion for summary judgment a copy of a license (ECF No. 44-4) issued to it by the Federal Maritime Commission, authorizing Nova to carry on business as a "non-vessel operating common carrier." Nova argues that this license shows that Nova remains responsible for the Debtor's machines until they reach their final destination. However, whatever legal obligations this license may impose upon Nova relative to the Federal Maritime Commission, the issuance of the license does not show that Nova actually gave or did anything after the filing of the Debtor's bankruptcy case. Nor does Nova reconcile its argument that it remains responsible for the Debtor's machines until they reach their final destination with paragraph 5 of Nova's own Terms and Conditions, which categorically states that Nova is not responsible for its customer's cargo once it is placed in the custody of a vessel or other third party.

to pay its debts to Nova in accordance with the Invoices and the Terms and Conditions. Nova's evidence of such "understanding" consists solely of Simcha's and Levin's conclusory statements that the Debtor did not intend to be bound by the Invoices and the Terms and Conditions, plus Epshteyn's self-serving deposition testimony in which he attempts to disavow all of Nova's own documents because it is now expedient to do so. Nova has not come forward with any specific facts or other probative evidence to establish the existence of any "understanding" between the Debtor and Nova contrary to the Invoices and the Terms and Conditions.[4] Nova's argument that the Transfers were in payment of debts that were incurred by the Debtor post-petition is wholly unsupported by Nova and directly controverted by all of Nova's own documentary evidence.

## Conclusion

There are no genuine issues of fact. The Invoices are pre-petition debts that were incurred by the Debtor with Nova for services that were performed entirely pre-petition by Nova for the Debtor. Nova issued its Invoices upon completion of the performance of its services. There were no post-petition services performed by Nova. The Transfers were payments made by the Debtor after the commencement of the case to pay the pre-petition debts owed to Nova pursuant to the Invoices. Nova has not met its burden of proof to show that it *gave* any value to the Debtor post-petition that would enable Nova to qualify for the exception under § 549(b) or even to create a

---

[4] The Court notes that the Debtor paid five of the six Invoices by Transfers made after the delivery of the Debtor's machines to their final destination, and paid the other Invoice (Invoice 3922) by a Transfer made before the delivery of the machine described in that Invoice. But dates of the Transfers relative to the dates of delivery are irrelevant. The fact that the Debtor paid five of the Invoices past their express due date does not tend to prove that there was any "understanding" between the Debtor and Nova that contradicted or altered either the Invoices or the Terms and Conditions. This fact is especially unsurprising considering that the Court expressly found in the trial of the involuntary bankruptcy petition that the Debtor was generally not paying its debts as they came due.

genuine issue of fact that would prevent the Court from granting summary judgment to the Trustee. The Trustee is entitled to summary judgment. The Court will enter a separate order consistent with this opinion.[5]

FOR PUBLICATION

.

**Signed on April 01, 2013**

                                                 **/s/ Phillip J. Shefferly**
                                                 **Phillip J. Shefferly**
                                               **United States Bankruptcy Judge**

---

[5] Nova's brief in support of its motion for summary judgment makes several other arguments. The Court has considered all of them, even if they are not mentioned in this opinion. None of them have merit. They do not create any genuine issues of material fact either as to the Trustee's burden to demonstrate the elements of § 549(a) or Nova's burden to demonstrate the elements of § 549(b).

11-06300-pjs    Doc 51    Filed 04/01/13    Entered 04/01/13 17:01:29    Page 15 of 15